Bradley, J.
When the plaintiff went into the employment of the defendant, he assumed the ordinary hazards incident to the service. And the defendant undertook that reasonable care should be used in furnishing suitable and safe structures, appliances, and tools, and that he should not unnecessarily in that respect be exposed to hazard of personal injury in the service. There is no evidence to *278 justify the conclusion that the brake apparatus was not suitable in plan, dimension, or mechanism, for the purposes designed, or that the defendant was chargeable with any fault for providing it as an appliance on the car. The questions upon the merits are : 1. Was it in a defective condition when the plaintiff sought to use it at the time in question? 2. If so, can such condition be attributable to the negligence of the defendant ?
The burden was with the plaintiff to establish the affirmative of those propositions, and to prove that he was free from contributory negligence. He was head brakeman on the train, and his testimony is to the effect that the train left Rochester about five and a half o’clock in the evening of the 9th day of November, 1811, and when it was approaching Holly the whistle was blown, and he left the smoking car where he had been sitting, went to the forward platform of the next car in its rear, and took hold of the wheel of this brake, and turned up the slack or loose chain, and then with both hands turned the wheel of the brake, and the wheel flew off and he fell from the platform to the ground, and in that manner received his injury, and that he took the rim of the whee] off with him. His description of the manner in which the -wheel was broken, if taken as true, would tend to prove that the apparatus was then in an impaired condition, in view of the evidence as to its character and strength when it was put upon the car. This was what was known as the Creamer patent brake. The wheel was near the top of the standard, or upright rod, which passed through the hub of the wheel, and a nut on the end of the rod projecting above the wheel held the latter to its place. There were six iron spokes extending from the hub to the rim of the wheel. Those were broken off, which caused the severance of the rim from the other portion of the wheel on the occasion in question. There was an automatic arrangement connected with this brake, and was a.part of the apparatus, and it could be so wound up by_ the reverse motion of the wheel as to enable the engineer in cases of emergency, or when he desired, to apply this and other similar brakes on the train by means of cords connected with one extending to the engine. The force operating it, when set in motion, was applied by means of a spring, the winding up of which, it seems, required at least as much force as it did to apply the brake by the use of the wheel, and was' usually done by the united strength of two men. They were usually kept so wound up in the running of the train; but thafPdid not interfere with the application of the brakes by the operation of the wheels in the ordinary manner by hand. The automatic apparatus might be sprung into motion by a per *279 son on the platform where it was located, but it is evident that it would not be done except by accident or carelessness, as that arrangement was designed for the use of the engineer only. When the engineer undertook to start the train out of Holly station, it was found that this brake was applied, and the train could not be moved until relieved from the force of the brake. And the evidence tends to prove that this automatic brake had been sprung by some means other than by the engineer, and that they were able to release the train from the force of its application only by breaking off the dog.
This situation was made a circumstance in support of the defendant’s contention that the relation of the occurrence by the plaintiff was improbable and untrue, upon which much evidence was given upon the part of the defendant. It did not appear by any direct evidence by what means the automatic brake was sprung into operation. As a whole, the evidence was such as to permit the conclusion that the brake wheel gave way by reason of its defective condition. But that was not sufficient to charge the defendant with the consequences unless it also appeared that the defendant had notice of such condition, or by the exercise of ordinary care would, and therefore ought to have known it. It appears that the custom was to inspect the cars of the train before it left Rochester, and there is evidence tending to prove that it was done before the train left there that evening, and that no defect in the brake was discovered. There was also evidence to the effect that this automatic apparatus was wound up at Rochester before the train left that evening. And this was an important fact on the trial, for if this was done it is evident that the brake wheel was not before then defective, because if it had been, it would have been quite impossible for it to survive the force applied to do so, and the defect could not in that case have existed for the length of time required to charge the defendant with negligence in that respect. One witness testified that it was wound up there that evening, and that the plaintiff helped do it.
This is contradicted by him, and that question of fact become one for the jury.
And it appears that it was not necessary to relax the spring every trip, but that when once wound up it would, without impairment, remain so for almost any length of time. The question then arose whether the condition of the broken spokes was such as to fairly require the inference that the fractured condition had existed for a considerable time.
The next morning after the accident a rim of a brake wheel was picked up in the locality where the plaintiff was *280 thrown to the ground, and the witnesses who then saw it testify that the broken ends of three or four of the spokes attached to the rim were rusty, and the others were bright and apparently freshly broken. This evidence was met by evidence that only one night was required to produce rust on freshly broken iron, exposed to the ordinary moisture of the atmosphere, and this appeared to have been illustrated by experiment.
' And a witness in the employment of the defendant testified that he examined the ends of the spokes attached to the hub of the wheel at Niagara Falls that evening when he took it off, and “ examined it the next morning by daylight, the appearance of the ends of the spokes were—they were perfectly fresh breaks.” This was the situation of the evidence on the subject of the apparent condition of the broken ends of the spokes on the second trial.
But upon this third trial another witness appeared and testified that he was formerly in the employment of the defendant, that on the evening of the accident he took at Albion the plaintiff’s place as brakeman on this train, that when he went on to the train there he examined the broken wheel, that he looked at the broken spokes attached to the hub, and adds : “I discovered that two of the spokes were fresh as if recently broken, and the rest of them seemed rusty; there was rust on the four others, on the ends of the spoke. ” It is contended that the evidence of this witness is not entitled to any consideration and that he failed to support himself because on his cross-examination he said: “I got on board this train to attend to my business as brakeman, and as I got on I looked at this wheel, and thought I saw some rust on some of the spokes, and then I went on and attended to my business.”
He was not called as a witness on either of the former trials. That fact, and the manner in which he appeared on the stand and gave his testimony, and to what extent that given on his cross-examination qualified his evidence in chief, was for the jury; and it cannot, as matter of law, be said that he intended to modify the statement made on his direct examination, or that his last mentioned statement as a witness had such effect. And the circumstance that this was after dark in the evening was also a proper fact for consideration on the trial. It does not appear that he was asked to state, or that he did state, what means he had of light to see and examine the broken wheel. And it cannot be assumed here that he was without the supply of adequate light to see what he says he observed there. The time he went upon the train at Albion was shortly after the occurrence in question. And if his evidence was true, it tended to prove a fact of some importance, having rela *281 tian to the time that the fracture of the spokes had existed. Upon this subject the evidence that the points of the fractured ends of the spokes were not worn or disturbed by the process of the vibration of the ends against each other was also entitled to consideration. Witnesses testified that the jar of the moving trains would have the effect to produce lamination of the fractured ends of the spokes, which did not appear on those ends connected with the detached rim. But all these matters were subjects for the consideration of the jury. There are various other circumstances which it is contended cast suspicion upon the plaintiff’s case and conduct. He had been in the service of the defendant about five years at the time of the injury, and a few months afterwards his recovery was such as to permit, and he returned into the defendant’s employment, and remained in its service until in 1876, when his employment there ceased, and he shortly after commenced this action—five years after the injury.
And the evidence tends to prove that in some respects the testimony of the plaintiff has not in its details been entirely in harmony, on the several trials. The circumstances are forcibly urged on the part of the defense as reasons why his evidence should be deemed discredited and as not sufficient to support any material fact in his behalf. But these were considerations very properly for the jury, and we should have felt compelled to hold it error in the trial court if it had directed the jury to disregard his evidence.
The fact that he was head brakeman, and that he was as such in the habit of going through the train and making examination of the brakes, and that he did it on the evening in question, before or shortly after it left Rochester, and observed no defect in this brake wheel was a circumstance bearing upon the question of the alleged negligence of the defendent in not making discovery of the defective condition if it had existed for some considerable time. But the jury were permitted to conclude that his examination was not such as was required or expected to be made by a careful inspection. As a whole the evidence was sufficient to go to the jury on the question whether this brake wheel had been in this fractured condition for such time prior to the starting on tins trip as to justify the conclusion that by the exercise of ordinary care, and such care as the defendant’s duty required it to bestow, by means of properly provided instrumentalities, the defective condition would have been disclosed. The operation by an employee of a hand brake was a position of danger" to him in some degree, unless it was kept in good condition of repair, and adequate to the force for its And so far as the *282 exercise of due care fairly required, the duty was with the defendant to guard its employee from unnecessary danger or injury from defective appliances. Kain v. Smith, 80 N. Y., 450; Devlin v. Smith, 89 id., 470; Sheehan v. N. Y. C. and H. R. R. Co., 91 id., 332; Pantzar v. Tilly F. I. M. Co., 99 id., 368. And due care is measured somewhat by the hazards to which an employee may be exposed by failure to observe and correct structural defects, and mechanical infirmities. De Graff v. N. Y. C. and H. R. R. Co., 76 N. Y., 125. This duty is usually performed by a system of inspection. The evidence seemed to be such as to justify the conclusion that by the exercise of reasonable care in the inspection of this car the fracture of the wheel would have been observed. There are many circumstances which throw much doubt upon the evidence in support of the facts material to the plaintiff’s recovery, but it cannot be said that the case was not one properly for the consideration and determination of the jury, and the trial court was not permitted to withdraw it from them.
On the first trial, as appears by the statement of facts contained in the opinion of the court of appeals there was a marked failure of evidence to support the action. And on the second trial there was not sufficient evidence to fairly justify the inference that the fracture of the wheel existed for such time prior to the injury .as to charge the defendant with negligence. It cannot be said that the additional evidence given on this trial does not furnish some support to the plaintiff’s case at a vital point for the consideration of the jury. The jury were not required by the evidence to find that any fault or negligence of the plaintiff contributed to his injury.
We think the exceptions to the denial of the motion for nonsuit, and to refusal to direct a verdict for the defendant, were not well taken.
The defendant’s counsel requested the court to charge the jury:
“ That if they believe the plaintiff has simulated and endeavored to aggravate the appearances in his favor, for the purpose of enhancing a claim of this character against the defendant, that circumstance should certainly exclude him from any compensation, or any amount of compensation, to the extent that they believe his claim is made upon that basis.”
The court followed this request with the remark, “All these matters are questions of fact.” And the defendant’s counsel excepted to the refusal to so charge, and to the charge as made.
The practical effect of this request was to charge that the jury should, if they found for the plaintiff, give him, by their verdict, such damages only as he had sustained.
*283 The court had charged the jury on the subject of damages that they:
“Had the right to take into consideration the expenses to which he was subjected, the length of time he was kept out of employment, and suffering inflicted upon him, and if they found that he was permanently disabled by reason of it, the extent of such permanent disabilities; that in a case like this there can be no exemplary damages, because nobody was willful in the matter. So the actual damages to be awarded are the natural damages sustained.”
In view of the charge as made the exception seems not well taken.
We find no error in any ruling of the court upon the trial.
The judgment and order should be affirmed.
Smith, P. J., and Barker, J., concur.